Taft, J.
 

 The charge against defendant was based on the portion of Section 1639-45, General Code, which reads:
 

 “Whoever * * * causes, encourages or contributes toward the * * * neglect * * *, as herein defined, of a child #
 
 * *
 
 shall be fined * * * or imprisoned * * *. Each day of such contribution to such * * * neglect * * * shall be deemed a separate offense.”
 

 From a reading of that section and of the affidavit pursuant to which defendant was convicted, it is apparent that the ultimate question to be decided is whether the state has established, beyond a reasonable doubt, that defendant did “cause, encourage or contribute toward the neglect ’ ’ of his son.
 

 This leads to the question as to whether there was any “neglect” of defendant’s son.
 

 On this question, the state relies on that portion of Section 1639-3, General Code, reading:
 

 “For the purpose of this chapter the words ‘neglected child ’ includes any child:
 

 Í C
 
 * * #
 

 “3. Whose
 
 parents,
 
 guardian or custodian
 
 neglect or refuse to provide
 
 it
 
 with proper
 
 or necessary * * *
 
 education
 
 * * (Emphasis added.)
 

 The state offered no evidence to prove that the defendant refused to provide his son with proper education. The question remains whether defendant neg-. lected to do so.
 

 The undisputed evidence discloses that the defendant sent his son to the proper public school and twice
 
 *66
 
 sent Ms son there even after the son had been refused admittance. Does the statute (Section 1639-3, General Code) permit a holding that defendant’s son is a neglected child, in that defendant failed to provide him with a proper education, where defendant endeavored to send him to the proper public school, but the child was refused admittance merely because he was not vaccinated!
 

 The regulation of the board of education relative to vaccination was adopted pursuant to the authority provided by Section 4838-5, General Code, which reads:
 

 “The board of education of each * * * district may make and enforce such rules and regulations to secure the vaccination and immunization of, and to prevent the spread of communicable diseases among the pupils attending or eligible to attend the schools of the district, as in its opinion the safety and interest of the public require.
 
 Boards of health, councils of municipal corporations, and trustees of townships, on application of the board of education
 
 of the district,
 
 at
 
 the
 
 public expense, without delay, shall provide
 
 the means of
 
 vaccination
 
 and immunization
 
 to such pupils os are not provided therewith by their parents
 
 or guardians.” (Emphasis added.)
 

 Our attention has been invited to no law requiring a father to provide for the vaccination of his son. There was no evidence offered by the state tending to prove that the defendant prevented the vaccination of his son, provided for by the portions of Section 4838-5, General Code, emphasized in the above quotation of that statute.
 

 In
 
 State, ex rel. Milhoof, v. Board of Education of Village of Barberton,
 
 76 Ohio St., 297, 81 N. E., 568, .this court did hold that a father could not, by writ of mandamus, compel a board of education to admit his son to a public school, where the son had not been vaccinated and the board had adopted a regulation for
 
 *67
 
 vaccination similar to that involved in the instant case.
 

 However, the question presented in this case is entirely different. The question here involved is whether the defendant’s son is a neglected child, within the meaning of Section 1639-3, General Code, merely because the father failed to have him vaccinated.
 

 Neither Section 1639-3 nor 1639-45, General Code, under which the father was convicted, says anything about vaccination. There is no allegation or proof that the defendant did anything which prevented the vaccination of his son and thereby prevented compliance with a condition precedent to the admission of his son to the public schools. The evidence shows conclusively that the father endeavored to have his son attend the public schools.
 

 A penal statute, such as Section 1639-45, General Code, cannot be extended by implication to cases not falling within its terms. The only transactions to be included under the terms of such a statute are those which are within both its spirit and its letter. All doubts in the interpretation of such a statute are to be resolved in favor of the accused. See
 
 State v. Meyers,
 
 56 Ohio St., 340, 47 N. E., 138; 12 Ohio Jurisprudence, 55, Section 12.
 

 The portions of Section 1639-3 and Section 1639-45, General Code, relied upon by the state, were certainly not intended by the General Assembly to be used as a means of enforcing a rule of the board of education providing for vaccination. Such a construction would give the board of education the power, by the indirect means of criminal legislation, to enforce such a regulation not only against a pupil but against his parents. In the absence of a clear legislative expression of an intention to confer that power, such power cannot be supplied by inference or implication. This is especially true since, after conferring upon boards of education general power to make rules with regard to vac
 
 *68
 
 eination, specific authority was conferred by the General Assembly with regard to vaccination of those children whose parents had failed to provide for their vaccination.
 

 Since the question is not raised by the facts in the record, we do not decide whether, if there had been proof that the defendant had in some way prevented the vaccination of his son in the manner contemplated in the second sentence of Section 4838-5, General Code, he might then be convicted of contributing to the neglect of his son.
 

 The judgment of the Court of Appeals is reversed and the cause is remanded to the Juvenile Court with instructions to dismiss the charge against defendant.
 

 Judgment reversed.
 

 Hart, Zimmerman, Stewart and Turner, JJ., concur.